IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY | : | CIVIL ACTION |
| | : | No. 25-5680 |
| v. | : | |
| | : | |
| WILLIAM KARDOSH, MARY ELLEN KARDOSH | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez** **July 23, 2026**

Plaintiff Nationwide Mutual Insurance Company ("Nationwide") seeks a judgment declaring it has no duty to defend or indemnify pro se Defendants William Kardosh and Mary Ellen Kardosh (collectively "the Kardoshes") in a state lawsuit brought against them by their daughter, Julia Kardosh. Nationwide asserts the allegations in Julia's complaint do not fall within the terms and conditions of the insurance policies it issued to the Kardoshes. The Kardoshes argue the coverage issues are not ripe, they are entitled to defense under the terms of their insurance policies, and Nationwide is estopped from withdrawing its defense. Both parties have moved for summary judgment. The Court will grant Nationwide's motion because this action is ripe, the insurance policies do not cover the allegations brought by Julia, and Nationwide is not estopped from withdrawing its defense of the Kardoshes.

**BACKGROUND**

This case stems from an unfortunate family dispute. Julia Kardosh is the daughter of Defendants Mary Ellen Kardosh and William Kardosh. Am. Compl. ¶¶ 1-3, Dkt. No. 1-4. On July 1, 2025, Julia filed a pro se civil action against William and Mary Ellen in the Court of

Common Pleas of Chester County.[1] *See generally* Compl., Dkt. No. 1-3. She brought claims alleging a scheme by William and Mary Ellen to unlawfully evict Julia from their family home and gain custody of her children. *Id.* at 2.

During the relevant timeframe, the Kardoshes were insured by Nationwide under both a Homeowner Policy ("HO Policy") and a Personal Umbrella Liability Policy ("PUL Policy"). *See* HO Policy, Dkt. No. 1-5; PUL Policy, Dkt. No. 1-6. Under the PUL Policy, Nationwide agreed to defend the Kardoshes against any lawsuit that arises out of an "occurrence" as defined by the policy.[2] The PUL Policy defines an "occurrence" as "an accident" that "must result in 'bodily injury', 'property damage', or 'personal injury' caused by an 'insured'."[3] Relevant to this case, "personal injury" is defined as an injury arising out of a list of specific torts.[4] But the PUL policy explicitly excludes coverage for bodily injury or personal injury to the insured or a family

---

[1] The state court action is docketed under the caption *Julia Kardosh v. Mary Ellen & William Kardosh*, docket no. 2025-05806-TT (C.P. Chester).

[2] "We will defend a suit against an 'insured', with attorneys of our choice, resulting from an 'occurrence' covered by this policy." PUL Policy, Dkt. No. 1-6 at 14.

[3] "'Occurrence(s)' means an accident including continuous or repeated exposure to the same general harmful conditions. It must result in 'bodily injury', 'property damage', or 'personal injury' caused by an 'insured'. . . . The 'occurrence' resulting in the 'personal injury' must be due to an offense committed during the policy period." *Id.* at 11.

[4] "'Personal injury' means injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period: a. False arrest, detention or imprisonment; b. Malicious prosecution; c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor; d. Oral or written publication in any manner, including electronic publication, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or e. Oral or written publication in any manner, including electronic publication, of material that violates a person's right of privacy." *Id.*

member.[5] The policy further defines a "family member" as "a person related to [the insured] by blood, marriage or adoption who is a resident of [their] household."[6] Together these two provisions are commonly referred to as a household exclusion. The policy also excludes coverage for punitive damages.[7]

The HO Policy also covers defense of lawsuits arising out of an "occurrence," and contains a household exclusion and an exclusion for punitive damages identical in substance to those in the PUL Policy. HO Policy, Dkt. No. 1-5 at 12-13, 29, 35, 41. The HO Policy additionally only covers bodily injury and property damage. *Id.* at 11, 35.

On July 9, 2025, after receiving notice of Julia's lawsuit, Nationwide opened a claim, commenced its investigation into the matter, and assigned an attorney to represent Mary Ellen and William. Defs.' Mot. Summ. J. 6, Dkt. No. 10. On August 11, 2025, Julia filed an amended complaint, asserting claims of Abuse of Process (Count I), Civil Conspiracy (Count II), Defamation (Count III), Intentional Infliction of Emotional Distress (IIED) (Count IV), Intrusion Upon Seclusion (Count V), Conversion (Count VI), Breach of Fiduciary Duty (Count VII), and Interference with Parental Rights (Count VIII). Am. Compl. ¶¶ 36-88. She seeks compensatory and punitive damages in addition to injunctive relief awarding her custody rights of her children. *Id.* at 25-26.

---

5 "Excess liability and additional coverages do not apply to . . . '[b]odily injury' or 'personal injury' to you or a 'family member' . . . ." *Id.* at 15, 18.

6 "'Family member' means a person related to you by blood, marriage or adoption who is a resident of your household." *Id.* at 11.

7 "Excess liability and additional coverages do not apply to . . . a. Judgments; b. Costs; c. Attorney fees; or d. Claims against an 'insured' for punitive or exemplary damages." *Id.* at 15, 20.

On October 1, 2025, Nationwide sent a Reservation of Rights letter to William and Mary Ellen. Dkt. No. 10 at 126. In the letter, Nationwide stated neither the PUL Policy nor the HO Policy covers the defense of or indemnification for the lawsuit. *Id.* at 132. It concluded (1) both policies are limited to bodily injury or property damage, neither of which was pled by Julia, (2) a household exclusion in both policies bars coverage for claims regarding events that occurred while Julia resided with her parents, and (3) the allegations of intentional actions are not covered under the policies. *Id.* The Kardoshes claim they received the letter on October 3, 2025. Defs.' Mot. Summ. J. 6.

On October 2, 2025, Nationwide filed this federal court action against the Kardoshes and Julia seeking a declaration that it does not have to defend or indemnify the Kardoshes for the underlying state court action. Dkt. No. 1. On October 21, 2025, William and Mary Ellen filed an answer, electing to proceed pro se. Dkt. No. 9. On November 20, 2025, the Court held a Rule 16 conference with the Kardoshes and Nationwide, in which Julia did not participate. Dkt. No. 20. Nationwide indicated during the conference that Julia could be dismissed from the case and later filed a notice of dismissal to that effect. Dkt. No. 21. The Court then issued a case management order directing the parties to file a single certified record on which the motions for judgment would be based and set a March 2, 2026 deadline for cross motions for judgment. Dkt. Nos. 24 & 25. On January 31, 2026, the parties created a certified record which included Julia's underlying amended state court complaint. Dkt. No. 26.

On February 9, 2026, the state court judge in Julia's underlying lawsuit dismissed the breach of fiduciary duty count with prejudice, dismissed the abuse of process, defamation, and IIED counts without prejudice, and set aside the complaint based on improper service. Dkt. No. 33-2 at 1-2. On February 12, 2026, the Kardoshes moved to stay all proceedings in this case and

revoke or suspend the certified record. Dkt. No. 27. On February 26, 2026, the Court held a status conference regarding the state court developments and the stay motion. Dkt. No. 31. The same day, the Court extended the briefing deadlines but declined to stay the case. Dkt. No. 32.

On March 31, 2026, the Kardoshes filed a Brief in Support of Judgment on the Certified Record. Dkt. No. 34. On April 1, 2026, Nationwide filed a motion for summary judgment. Dkt. Nos. 35 & 36. Nationwide thereafter filed a response to the Kardoshes' motion, Dkt. No. 38, and the Kardoshes filed a reply supporting their motion. Dkt. No. 39. The Kardoshes did not separately respond to Nationwide's motion. An oral argument was held on May 14, 2026.

**LEGAL STANDARD**

A court will grant summary judgment if a moving party can establish "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). The moving party bears the initial burden of identifying the parts of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to show there is a genuine issue of material fact requiring the case to proceed to trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is "material" if it could affect the outcome of the suit—as determined based on the substantive law governing the issue—and a dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248. In reviewing a motion for summary judgment, a court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in their favor. *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 345 (3d Cir. 2022). A court must consider the parts of the record cited by the parties—such as documents and affidavits—and may consider other parts of the record. Fed. R. Civ. P. 56(c).

A determination of what is covered under an insurance policy is a question of law. *PECO Energy v. Boden*, 64 F.3d 852, 855 (3d Cir. 1995). To determine whether a claim may potentially come within the coverage of the policy, a court must first ascertain the scope of the insurance coverage and then analyze the factual allegations in the complaint. *Biborosch v. Transamerica Ins. Co.*, 603 A.2d 1050, 1052 (Pa. Super. Ct. 1992). "In making this determination, the factual allegations of the complaint are taken to be true and the complaint is to be liberally construed with all doubts . . . resolved in favor of the insured." *Id.* Under Pennsylvania law, "[a]n insurer's duty to defend is triggered if the factual allegations in the complaint, taken as true, 'would support a recovery that is covered by the policy.'" *USAA Gen. Indem. Co. v. Floyd*, No. CV 19-03820, 2019 WL 6310258, at *2 (E.D. Pa. Nov. 25, 2019) (quoting *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987)). "[A]n insurer with a 'duty to defend' must provide a complete defense on behalf of its insured so long as even one allegation of the complaint falls potentially within the scope of the coverage of the insured's policy." *Widener Univ. v. Fred S. James & Co.*, 537 A.2d 829, 832 (Pa. Super. Ct. 1988) (citations omitted). "If an insurer does not have a duty to defend, it does not have a duty to indemnify." *Indalex Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 83 A.3d 418, 421 (Pa. Super. Ct. 2013).

**DISCUSSION**

Nationwide argues it is entitled to declaratory relief because its insurance policies do not cover the Kardoshes' defense or indemnification for Julia's lawsuit. The Kardoshes rightly concede that the HO Policy does not apply to them.[8] Instead, they argue this case is not ripe for disposition. They also argue the PUL Policy's personal injury provisions cover their defense. In

[8] The HO Policy would not cover them because it only covers occurrences resulting in bodily injury or property damage. HO Policy ¶ 11. Julia does not allege she suffered any injury to her body or property.

the alternative, they assert Nationwide is estopped from withdrawing its defense because the reservation-of-rights letter it sent to them was untimely. The Court rejects the Kardoshes' arguments and finds in favor of Nationwide. It will address each of those arguments in turn.

Before addressing the merits of this case, the Court must first confirm its jurisdiction. The Kardoshes argue Nationwide's motion, and by implication this case, are not ripe because the underlying complaint has been set aside for lack of service. "It's well-settled, however, that a declaratory action to determine the scope of an insurer's duty to defend an insured in a separate, ongoing lawsuit is ripe for adjudication." *Nationwide Ins. Co. of Am. v. Schiavo*, No. 25-650, 2025 WL 1094163, at *1 (E.D. Pa. Apr. 11, 2025) (citing *ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 666 F.2d 819, 822-23 (3d Cir. 1981)). Indeed, courts in the Third Circuit frequently find "a declaratory action seeking to determine an insurer's obligation to defend its insured is ripe once 'there is an underlying action or *there is a threatened action*.'" *Trustgard Ins. Co. v. Fagan*, No. 18-CV-00714, 2018 WL 3631935, at *5 (M.D. Pa. July 31, 2018) (emphasis added) (quoting *Hartford Ins. Co. of the Midwest v. Dana Transp. Inc.*, No. 16-CV-9091, 2018 WL 10152321, at *4 (D.N.J. May 21, 2018)). While Julia's complaint is currently set aside for lack of service, the underlying action is still ongoing and may continue at any moment. This case is ripe for adjudication.

The Kardoshes assert this declaratory judgment action is unripe by citing *Reifer v. Westport Insurance Corp.*, 751 F.3d 129 (3d Cir. 2014), *State Auto Insurance Cos. v. Summy*, 234 F.3d 131 (3d Cir. 2000), and a case captioned *State Farm Fire & Casualty Co. v. Kelly*, which allegedly comes from this District. Defs.' Reply Br. 9 & n.7-9, Dkt. No. 39. They claim these cases show any declaratory judgment at this stage would be advisory. None of these cases help the Kardoshes. *Reifer* and *Summy* addressed the question of when a court should decline to exercise diversity jurisdiction over a declaratory judgment action involving purely state law issues and did not opine

on when such an action is ripe. *Reifer*, 751 F.3d at 137; *Summy*, 234 F.3d at 135 ("[W]here the applicable state law is uncertain or undetermined, district courts should be particularly reluctant to entertain declaratory judgment actions."). As to *State Farm Fire & Casualty Co. v. Kelly*, the Court cannot find any evidence that this case exists as cited.[9] Nor has the Court identified any other cases that support the Kardoshes' argument. Because the Kardoshes are incorrect, the Court can decide this case on the merits.[10]

Turning to the merits, the Court concludes Nationwide does not have an obligation to defend or indemnify the Kardoshes based on either the HO Policy or the PUL Policy. Under both

---

[9] The Defendants present the citation as follows: "*State Farm Fire & Cas. Co. v. Kelly*, No. 20-cv-3389, 2021 WL 2661508 (E.D. Pa. June 29, 2021) (United States District Court for the Eastern District of Pennsylvania)." Defs.' Reply Br. 9 & n.9. The Court cannot find this case using any of the information presented in this citation. A search based on the case name "State Farm Fire & Cas. Co. v. Kelly" produced no results in the Eastern District of Pennsylvania. The Court did find a case captioned *Kelly v. State Farm Fire & Cas. Co.*, 169 So. 3d 328, 330 (La. 2015), from Louisiana. But this case focuses on unsettled Louisiana state insurance law questions. *Id.* The Westlaw citation provided—2021 WL 2661508—links to *Green v. Meeks*, No. 20-CV-00463, 2021 WL 2661508, at *1-3 (S.D. Ill. June 29, 2021), a decision granting a motion for judgment on the pleadings in a prisoner civil rights case. Using the docket number "No. 20-cv-3389" leads to *Olen v. National Railroad Passenger Corp.*, No. 20-cv-3389 (E.D. Pa. July 10, 2020), a personal injury case. These cases have no bearing on the ripeness issue here.

Based on the complete inaccuracy of this citation, despite being presented in the correct format, this Court has good reason to believe this case was hallucinated by a generative AI tool. Indeed, many of the Kardoshes' filings have the markings of being AI generated based on their format and other fake or inaccurate citations. The Court will not take any further action regarding the use of fake citations and suspected AI usage because William and Mary Ellen are proceeding pro se, there is no evidence they used this citation in bad faith, and the Court is already ruling against the Defendants on the merits. Indeed, the Kardoshes have been professional, reasonable and forthright before this Court. They have represented themselves well. The Kardoshes are warned, however, to proceed with caution when relying on AI tools, especially to cite cases, if they plan on representing themselves in any future state or federal litigation.

[10] The Kardoshes also contend Nationwide's motion for summary judgment is procedurally improper because this Court ordered the parties to file motions for judgment on the record. Dkt. No. 32. The Court disagrees. The substance of Nationwide's motion complies with the Court's scheduling order, regardless of how Nationwide titled its motion. *Turner v. Evers*, 726 F.2d 112, 114 (3d Cir. 1984) (analyzing a motion based on its "function . . . not its caption").

policies, Nationwide must provide a defense and indemnification to the Kardoshes in suits for damages arising out of an "occurrence." Both policies define "occurrence" to mean "an *accident* including continuous or repeated exposure to substantially the same general harmful conditions." PUL Policy, Dkt. No. 1-6 at 11 (emphasis added); HO Policy, Dkt. No. 1-5 at 13. Pennsylvania courts have defined "accident" as "[a]n unexpected and undesirable event," or "something that occurs unexpectedly or unintentionally" when interpreting similar insurance policy language. *See, e.g.*, *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 897-98 (Pa. 2006). Additionally, "it is well established that the test of whether the injury or damage is caused by an accident must be determined *from the perspective of the insured*." *Nationwide Mut. Fire Ins. Co. of Columbus v. Pipher*, 140 F.3d 222, 226 (3d Cir. 1998). "So, to determine whether the damages alleged . . . [by Julia] stem from accidents, the Court must reason from the perspective of [the Kardoshes] whether the injuries asserted by [Julia] . . . were 'unexpected and entirely fortuitous.'" *Dundon as Tr. of Endo Gen. Unsecured Creditors' Tr. v. ACE Prop. & Cas. Ins. Co.*, No. 24-4221, 2026 WL 369916, at *11 (E.D. Pa. Feb. 10, 2026) (quoting *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 293 (Pa. 2007)). If Julia's injuries are not the unexpected or fortuitous result of the Kardoshes' alleged actions, the Kardoshes cannot benefit from the coverage.

Under this standard, Julia's amended complaint does not allege an "accident" occurred and therefore there is no "occurrence" that falls under the policies. First, all of Julia's allegations support claims of *intentional* torts: Abuse of Process, Civil Conspiracy, Defamation, IIED, Intrusion Upon Seclusion, Conversion, and Interference with Parental Rights.[11] Am. Compl. ¶¶

[11] Because the Court of Common Pleas dismissed the breach of fiduciary duty claim with prejudice, the Court will not consider allegations related to this claim. To the extent this claim is relevant, the allegations associated with it also allege intentional behavior. *See, e.g.*, Am. Compl.

36-88. It is true under Pennsylvania law, "the particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered." *Erie Ins. Exch. v. Fidler*, 808 A.2d 587, 590 (Pa. Super. Ct. 2002). But as the Third Circuit has noted, when a "complaint alleged *solely* . . . intentional act[s] and contained *no* allegations of negligence on the part of its insured," it is an "unremarkable conclusion that an intentional tort was not an accident and thus not a covered occurrence under the policy." *Pipher*, 140 F.3d at 225 (interpreting Pennsylvania law). Julia alleges only intentional torts.

Second, the nature of the allegations erases the possibility that the acts as alleged were unexpected or unintentional. Julia's factual allegations frame the Kardoshes' actions as "intentional" and motivated by "animosity," "malice," and "retaliation." *See, e.g.*, Am. Compl. ¶¶ 11, 17, 42, 44, 52, 59, 86. In particular, she states "Defendants' conduct was not motivated by genuine concern of the Children's welfare; rather, it was driven by animosity and retaliation toward Plaintiff and by Defendants' desire for control." *Id.* ¶ 52. Accepting these allegations as true and viewing them from the Kardoshes' perspective, their actions and the consequences of those actions are not unexpected or undesirable.

Third, it does not matter if the Kardoshes are ultimately found not liable in state court for any of these allegations including on the grounds of lacking intent. Instead, the determination of coverage depends on whether the Kardoshes' alleged conduct, when assumed true, falls under the policy. "The question is not as to the truth or falsity of a claim, but whether it is covered by the policy . . . ." *Gen. Acc. Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1094 (Pa. 1997) (quoting *Wilson*

---

¶¶ 12, 40-50, 77-78. Additionally, while an IIED or defamation claim can be established by proving "reckless disregard" instead of intentional conduct, Julia alleges intentional conduct. *Id.* ¶¶ 58-62.

*v. Md. Cas. Co.*, 105 A.2d 304, 306 (Pa. 1954)). As a result, none of the conduct alleged constitutes an occurrence, so the policy does not apply to the Kardoshes.[12]

As the Kardoshes note, however, even if an insurance policy does not cover certain conduct, an insurer may be estopped from withdrawing a defense in some circumstances. The Kardoshes argue that Nationwide is estopped from withdrawing its defense in the underlying action because it assigned a lawyer to represent them and only sent a reservation-of-rights letter months later. This argument is unpersuasive because Nationwide's letter was timely.

"It is well-established under Pennsylvania law that the burden rests on the party asserting estoppel to establish the defense by clear, precise[,] and unequivocal evidence." *Chrysler Credit Corp. v. First Nat'l Bank & Tr. Co. of Washington*, 746 F.2d 200, 206 (3d Cir. 1984) (citing *Blofsen v. Cutaiar*, 333 A.2d 841, 844 (Pa. 1975)). To succeed on an estoppel defense, an insured must show "conduct on the part of the insurer as would, if the insurer were not estopped, operate as a fraud on some party who has taken or neglected to take some action to his own prejudice in reliance thereon." *Nationwide Prop. & Cas. Ins. Co. v. Shearer*, 650 F. App'x 115, 117-18 (3d Cir. 2016) (quoting *Wasilko v. Home Mut. Cas. Co.,* 232 A.2d 60, 63 (Pa. Super. Ct. 1967)). So, an insured party who claims his insurer is estopped from denying its duty to defend must show (1) inducement by the insurer, (2) justifiable reliance by the insured, and (3) prejudice to the insured. *Id.* at 118.

Under Pennsylvania precedent, an "insurer will not be estopped [from setting] up the defense that the insured's loss was not covered by the insurance policy, notwithstanding the insurer's participation in the defense of an action against the insured, if the insurer gives timely notice to the insured that it has not waived the benefit of its defense under the policy." *Brugnoli*

---

[12] Because the Court finds Nationwide does not have to defend the Kardoshes based on the lack of an "occurrence," it will not address Nationwide's other arguments justifying its denial of coverage.

*v. United Nat'l Ins. Co.*, 426 A.2d 164, 167 (Pa. Super. Ct. 1981) (citation omitted). This reservation of rights "must fairly inform the insured of the insurer's position and must be timely, although delay in giving notice will be excused where it is traceable to the insurer's lack of actual or constructive knowledge of the available defense." *Id.* (citation omitted).

Nationwide received notice of the underlying suit from the Kardoshes on July 9, 2025, and sent a reservation-of-rights letter to the Kardoshes on October 1, 2025. The letter did fairly inform the Kardoshes of Nationwide's position. So, the dispute here is whether Nationwide's notice, sent less than three months after notice of the lawsuit, was timely.

Pennsylvania law has not established a brightline rule on when a reservation-of-rights letter is considered untimely. "Courts typically evaluate the timeliness of a reservation-of-rights letter by measuring from the point at which the insurer received notice of the claim against the insured." *Schiavo*, 2025 WL 1094163, at *4 n.4 (collecting cases). Applying this methodology, courts have found reservation-of-rights letters timely when the letter was sent between one week and three months after the insurer received notice of the underlying suit.[13] Meanwhile, letters sent after seven months or longer have been found to be untimely.[14] Based on the parameters set by these

---

13 *See, e.g.*, *Brugnoli*, 426 A.2d at 168 (finding insurer's letter sent within one week of receiving the complaint was timely); *Schiavo*, 2025 WL 1094163, at *4 (finding "a two-month gap does not alone satisfy the elements of estoppel"); *St. Leger v. Am. Fire & Cas. Ins. Co.*, 870 F. Supp. 641, 643-44 (E.D. Pa. 1994) (finding a letter sent "only about two and a half months after the underlying suit was filed" is timely), *aff'd*, 61 F.3d 896 (3d Cir. 1995); *Mountain Lakes Abstract Co. Inc. v. Certain Underwriters at Lloyd's, Lond.*, 605 F. Supp. 3d 645, 652 n.4 (M.D. Pa. 2022) (finding a "letter [sent] at most 85 days after Mountain Lakes brought First American's complaint to [insurer's] attention" to be timely); *The Rector, Wardens & Vestryman of St. Peter's Church in City of Phila. v. Am. Nat'l Fire Ins. Co.*, No. 00-2806, 2002 WL 59333, at *8 (E.D. Pa. Jan. 14, 2002) (finding a reservation-of-rights letter sent three months after the filing of the underlying complaint "was sent within a reasonable time"), *aff'd*, 97 F. App'x 374 (3d Cir. 2004).

14 *See, e.g.*, *Erie Ins. Exch. v. Lobenthal*, 114 A.3d 832, 840 (Pa. Super. Ct. 2015) ("[R]eservation of rights letter, sent approximately seven months after the complaint was filed, was untimely."); *Basoco v. Just*, 35 A.2d 564, 565-66 (Pa. Super. Ct. 1944) (holding that an

cases, the Court finds Nationwide's reservation-of-rights letter, which was sent within three months from notice of the underlying complaint, is timely. Nationwide is therefore not estopped from withdrawing its defense.

The plain terms of both insurance policies do not cover the Kardoshes against their daughter's lawsuit and Nationwide is not estopped from withdrawing its defense. The Court will declare that Nationwide is not obligated to further defend or indemnify the Kardoshes in relation to any claim alleged by Julia Kardosh in the underlying civil action in the Court of Common Pleas of Chester County captioned *Julia Kardosh v. Mary Ellen & William Kardosh*, Docket No. 2025-05806-TT, pursuant to the terms and conditions of the HO Policy and PUL Policy issued by Nationwide to the Defendants.

**CONCLUSION**

Accordingly, the Court will grant Plaintiff Nationwide Mutual Insurance Company's motion for summary judgment and deny Defendants William Kardosh and Mary Ellen Kardosh's motion for judgment.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.

insurance company was estopped from disclaiming coverage where it learned of facts supporting the policy exclusion eight months prior to asserting it); *New Castle Mut. Ins. Co. v. Johnston*, No. 90-2266, 1991 WL 1803, at *4 (E.D. Pa. Jan. 9, 1991) ("[Insurer's] failure to issue a reservation-of-rights letter until sixteen months after [receiving the complaint] compels the denial of [the insurer's] motion . . . on its claim . . . that [the defendant] is not entitled to indemnification."); *Selective Way Ins. Co. v. MAK Servs., Inc.*, 232 A.3d 762, 772 (Pa. Super. Ct. 2020) ("[Plaintiff] should have been estopped from asserting this policy exclusion for the first time eighteen months later without sufficient notice to [the defendant] regarding [its] coverage position.").